## McKesson and another *v.* Carnrick.

*(Circuit Court, S. D. New York. April 8, 1881.)*

1. **LETTERS PATENT—PILL MACHINE—INFRINGEMENT.**
    Letters patent for an improvement in pill machines, granted January 3, 1871, to Pierre Cauhapé, are not anticipated by either the Newton, Goward, or Murdoch & Haynes patents, nor by the Cordey apparatus; but infringed as to claim 2, by the apparatus used by Carnick.

2. **FORMAL CHANGES.**
    The use of the same combination is none the less an infringement for some changes in form.

3. **SAME—CLAIM 2 CONSTRUED.**
    By "the moulds, A," in the second claim is meant any suitable holder of the pills, whether they are formed therein or elsewhere.

4. **CLAIM 2—VALIDITY.**
    The second claim is good though the mould will not form a pill; provided, it will act as a holder for pills.

5. **SAME—SAME—COMBINATION.**
    The comb-bar, needles, and pill-holders form a combination; they are not a mere aggregation of parts.

6. **SPECIFICATION—SURPLUSAGE.**
    The word "glycerine" used in the specification may be rejected as surplusage.

7. **SAME—CLAIMS.**
    Where the claims are clear and distinct they will govern, rather than an ambiguous specification.

*Frederic H. Betts,* for plaintiffs.

*James A. Whitney,* for defendant.

BLATCHFORD, C. J.   This is brought on letters patent granted to Pierre Cauhapé, January 3, 1871, for an "improvement in pill machines." The specification states the invention to be an "improvement in the manufacture of pills." It says:

"This invention relates to improvements in the manufacture of pills, and it consists in the employment, either in a combination with a moulding device for shaping pills, or other holder for them, of a comb-bar with pins or needles, adapted for inserting a pin in each mould cavity for taking the pills and dipping them in the coating solution, and a clamp and stripper for taking them from the needles and redipping them, for filling and covering the cavities formed by the pins, all as hereinafter described. Figure 1 is a transverse section of the mould and the device for taking them therefrom. Figure 2 is a side view of the device for taking the pills from the mould and dipping them; also a sectional view of the bath, showing the manner of dipping them. Figure 3 is a perspective view of the clamp, stripper, and the device for taking them from the mould, showing the manner of stripping them. Figure 4 is a side elevation of the clamp; and figure 5 is a face view of the same. Similar letters of reference indicate corresponding parts.

"The pills are to be formed in a mould or flask, A, composed of two parts, either hinged together or not, each having a part of the cavities, of which there may be any convenient number, and from each cavity a groove extends to one side, so that where the two parts of the mould are closed together a pin may be thrust into the pill for removing and holding it; and in connection with this mould a comb-bar, B, is used, having as many pins or needles, C, as there are cavities projecting from it, the same distance apart as the cavities, for inserting into said cavities and taking the pills therefrom. The mould is then opened, the pills removed on the pins, and inserted in the bath of glycerine, or other substance with which they are to be coated. Then, for holding and redipping the pills to fill and cover the cavities left by the withdrawal of the pins, I use a clamp composed of the two bars, E, hinged together as shown in figure 3, and the elastic frictional strips, F, of India rubber or other like substance, the latter being placed on the faces of the said bars, which come together, when closed, over cavities, G, made considerably longer than the pills, and opening out through the front edges of said hinged bars, as clearly shown in figures 3 and 5, in which the pills are inserted by opening the clamp, presenting them thereto coincident with the cavities while on the pins, and drawing the latter back over the stripping-bar, H, placed in front of the clamp, and having the small grooves, I, in the upper surface, placed in front of the cavities, for guiding the pins of the comb-bar in placing the pills in the clamp. The pills are held by the soft, flexible, and elastic strips, F, so that the ends having the holes project, as shown in figure 4, and may be dipped to cover and fill the holes, and then be discharged by opening the clamps. In practice the moulds, comb-bar, clamp, and stripper may be made in any convenient length, and with any preferred number of holes best calculated to

effect a rapid operation, and any number of sets of apparatuses may be used, in case it may be required to retain the pills on the pins, or in the clamp, for drying the substance with which they are coated. The pills may be taken on the comb-bar while in any suitable holder, after having been formed in other moulds, and I propose to use it in this way if found advisable."

There are two claims, as follows:

"(1) The combination of the comb-bar, B, clamp, E, and strippers, H, substantially in the manner described and for the purpose specified; (2) the combination of the moulds, A, with the comb-bar, B, substantially as and for the purpose specified."

The only claim in question in this suit is the second claim. That claim relates to the combination of the comb-bar, carrying the needles, with the pill-holder, substantially as and for the purpose described. The pill-holder is to have a number of cavities, so as to secure rapid work. There are to be as many needles as there are cavities. The manner of the combination is to have a groove extending from each cavity when the two parts forming the holder are closed, so that the needle may pass through the groove into the pill, and the pill be retained on and removed with the needle when the two parts of the holder are separated, so that the pills on all the needles may be removed at once and be dipped, on the needles, all at once, into the coating solution. That is the purpose specified. The result of this rapid work is a greater number of pills created in a given time, and thus a reduction of cost.

It is objected that the specification states that the pills are to be formed in "a mould, A," and that the needle is to be thrust into the pill while the pill is in the mould in which it is formed, and that the defendant does not form his pills in his pill-holder; also that "the moulds, A, mentioned in the second claim, are limited to moulds in which the pills are formed, and cannot include as holders, receptacles in which the pills are not formed or made or moulded from the raw material. But this view is contrary to the tenor of the text of the specification, which states that the invention consists in combining the comb-bar carrying the needles with "a moulding device for shaping pills, or other holder for them," and that "the pills may be taken on the comb-bar while in any suitable holder, after having been formed in other moulds." That being so, the expression, "the moulds, A," in the second claim, must be held to mean any suitable holder of the pills, whether the pills are formed in it or in another mould. It is also objected that a pill cannot be moulded, with prac-

tical success, in the mould shown in the drawings of the patent, and that the specification is misleading in saying so. But no such defence is set up in the answer, nor does the answer allege any fraudulent or deceptive intention, nor is any such proved, nor is it shown that Cauhapé did not believe that he could mould pills in the mould, nor that he had not done so. Moreover, the second claim is good, even if the mould will not form the pill, provided it will act as a holder for the pill.

It is also objected that there is no combination between the comb-bar and needles and the pill-holders, but only an aggregation of parts. This is an erroneous view. The pill-holder holds the pill while the needle carried by the comb-bar is being thrust into the pill. The concert of action takes place when the needle enters the pill, and, although such concert of action continues only from the time the needle enters the pill until the pill is removed by the needle from the holder, yet the combination made by such concert of action continues as long as it needs to continue; and the concert of action could not exist at all, so as to impale the pill on the needle, if the pill were not carried by the holder and the needle were not carried by the comb-bar. So, when the needle enters the pill, there is a combination or concert of action between the comb-bar and needle and the holder carrying the pill.

It is also objected that the specification names glycerine as a substance to be used for coating, and that glycerine is not used as a coating and will not act as such. This is immaterial, and aside from the invention. No such defence is set up in the answer. The specification refers to any coating solution which will coat. The word "glycerine" may be rejected as surplusage. Neither one of the claims has any reference to any particular coating solution, nor has any specific coating solution any connection with the subject-matter of either of the claims.

It is also objected that the specification sets out with stating the invention to be a combination of the holder, the comb-bar, the clamp, and the stripper; and that in the claims there are two combinations: (1) the comb-bar, the clamp, and the stripper; and (2) the moulds and the comb-bar; and that there is no claim for a combination of all four elements. A combination of all four is an impossible combination. The holder never acts when the other three are acting. The clamp takes the place of "the moulds, A," when the stripper and the comb-bar are brought into action. The claims must

control, they being clear and distinct. Moreover, it is not a fair construction of the language of the statement of the invention, in the description, that it requires there should be a combination of the four elements. It speaks of the employment of a comb-bar and needles, in combination with a moulding device or other holder; and then it speaks of the employment of a clamp and stripper with the needles. The language might admit of a combination of the four, if such a combination could exist; but it equally admits of the two separate combinations which are claimed.

The mould shown in the drawings of the plaintiff's patent does, as a receptacle for or a holder of the pill, act perfectly, with its groove and the needle and the comb-bar, to produce the result specified in the patent, if the pill be suitable for the holder in size and shape, although the pill be made in another mould. The holder has certain characteristic features. It is made of two parts, fitted together, which enclose a series of cavities for pills, in which the pills are so held as to receive, all at the same time, the needles carried by the comb bar, and to be removed all together by the needles. A groove extends from each cavity through the body of the holder, and acts as a channel-way and a guide for the needle while it is being thrust into the pill. One part of the holder is removable from the other part in such a way that the removal of it lays bare all the pills in all the cavities and faces all the needles at once, so as to enable all the needles and all the pills to be carried away at the same time by the comb-bar. The comb-bar has as many needles as there are grooves or cavities or pills, and the needles are the same distance from each other as are the grooves. Thus the needle is accurately guided through and by the groove into the pill. The needle is sharp-pointed, and can enter and remove the pill without injuring it, and is so small that nearly all the surface of the pill can be coated while the pill is on the needle, and the needle can afterwards be removed from the pill without injuring it. The apparatus is shown to be a very valuable one in the business of supplying the market with gelatine-coated pills.

The structure used by the defendant, Exhibit No. 3, has a holder, provided with a large number of holes in its surface, to hold pills, the holes being shaped to conform to the shape of the pills and to support the pills properly for the action of the needles. There is also a frame carrying needles, which pass through and are guided by holes or grooves in and through another frame, the points of the needles projecting beyond the latter frame. There is one hole for each

needle. In use, the receptacles in the pill-holder are filled with pills. The points of the needles are at distances apart from each other corresponding with the distances between the pills, and are thrust into the pills until the face of the grooved frame comes against the face of the holder. The needle frame and the grooved frame are removed together, with the pills impaled on the needle points, and the pills are then dipped, in this condition, into the coating solution. There is the same combination as in the second claim of the plaintiff's patent, of comb-bar, needles, guiding groove, and pill receptacle. There is a merely formal change. The guiding groove, instead of being in the frame which contains the pill receptacles, is in a frame which is attached to the needle frame. But the grooves in the defendant's apparatus act to support the needles laterally against diverging forces, and thus to guide them and insure their penetrating the pills properly. It must be held that the defendant's apparatus infringes the second claim of the plaintiffs' patent. The guiding grooves in it, by allowing the frame in which they are made to be drawn towards the pills, while impaled, and after they are dipped, permit such frame to be used as a stripper, to free the pills from the needles; but this is an additional function added to the use of the Cauhapè invention. The defendant's apparatus has all the essential features of the combination covered by the second claim of the plaintiffs' patent, as before defined.

There is nothing in the provisional specification of Newton which shows the Cauhapé invention, or the apparatus of the defendant. There are no drawings with it. The description is ambiguous, and it is far from clear how the apparatus was made. It is not a machine for making pills, but one for making capsules. There is no idea in it of a plurality of pills all impaled, and freed together. There are no guiding grooves, and no sharp-pointed needles or pins.

As to the Goward patent, Cauhapé's application was filed before Goward's specification was sworn to.

As to the Murdoch and Haynes patent, the defendant has introduced no evidence to show its bearing. On the contrary, the plaintiffs' expert shows that what is described in it has no relevancy to either the plaintiffs' apparatus or the defendant's.

The Cordey apparatus amounts to no anticipation of either the plaintiffs' or the defendant's. No original apparatus is produced. The matter is one of recollection, after the lapse of many years. The

witnesses do not agree, and there is great doubt and obscurity. Whatever there was, there were no guiding grooves and no sharp needles; nothing adapted to pick up pills which were to be coated and then stripped so as to leave no material trace of the puncture. Even if Cauhapé knew of all that was there at the time, there was invention in what he patented.

The assignment from Cauhapé to the plaintiffs is satisfactorily proved as a valid assignment. The testimony of Wickham fully explains the interlineations.

All the views urged on the part of the defendant have been carefully considered, although only the material ones have been commented on. There must be a decree for the plaintiffs as to the second claim of the patent, in this suit, and also in the suit against Neynaber.